45

United States District Court
Southern District of Texas
ENTERED

NOV 0 4 1999

Michael N. Milby, Clerk of Court
By Deputy Clerk

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# BROWNSVILLE DIVISION

| | | |
|---|---|---|
| Heino Brasch and Jane Akin Brasch, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. B-98-126 |
| | § | |
| Town of Palm Valley and Office of the | § | |
| Attorney General of the State of Texas | § | |
| | § | |
| Defendants. | § | |

## FINAL ORDER

BE IT REMEMBERED that on October 25, 1999 the Court considered Plaintiffs'
Motion for Summary Judgment [Dkt. No. 7] and Defendant's Cross Motion for Summary
Judgment [Dkt. No. 26]. Based on the motions, responses, and briefs submitted to the Court,
and the record of counsels' arguments, the Court rules that the Plaintiffs' motion is
**GRANTED** and the Defendant's motion is **DENIED**.

## I.    FACTUAL BACKGROUND

In 1995, Plaintiffs, Heino Brasch and Jane Akin Brasch, bought a house in the Town
of Palm Lake ("Town"). After the Plaintiffs purchased their lot they decided to fence in their
back yard, which borders directly on the privately owned Harlingen Country Club golf
course. The Plaintiffs consequently applied to two Town administrative bodies – the
Architectural Control Committee and Board of Adjustments – for permission to build a fence

1

along their rear property line. The Plaintiffs were repeatedly denied permission to build the fence because the administrative bodies decided that it would violate a Town zoning ordinance and that they had no power to grant a variance.

Plaintiffs' property is subject to Ordinance 83-4, which contains all of the zoning regulations for the Town. The ordinance contains a setback provision which prohibits the Plaintiffs from placing "vertical structures of any kind, temporary or permanent," within "twenty-five (25) feet from the edge of the golf course" [Dkt. No. 13, Exhibit A-1, Art. VI, Sect. 4(8)].[1] Ordinance 83-4 was amended by Ordinance 99-4 during the pendency of this litigation to include a definition of "structure." "Structure" is now defined as "anything constructed or erected, the use of which requires location on the ground or which is attached to something having a location on the ground and which rises to a level of over **three** feet (3) in height and over **two** (2) feet in width or depth so as to block, burden, or otherwise unreasonably obstruct the panoramic view from the residential lots across other lots and/or the golf course area" [Dkt. No. 43, Exhibit P, Sect. 5(2)]. The ordinance's golf course setback provision was based on pre-existing deed restrictions that similarly limit the construction of fences [Dkt. No. 13, Exhibit J, Par. 4(e)], and, until recently, the Town was expressly empowered to enforce private deed restrictions [Dkt. No. 13, Exhibit A-1, Art IV].[2]

---

[1] The setback provision of Ordinance 83-4 was amended during the pendency of this litigation. In all material respects, the provision remains the same. The amended setback provision states: "Consistent with the setback provisions already in force pursuant to the applicable deed restrictions and the community's original development plan, no vertical structure, as structure is defined in this Section 5, shall be allowed within the twenty-five (25') foot setback area on properties adjacent to the golf course" [Dkt. No. 43, Exhibit P, Sect. 5(1)].

[2] In part, in response to this litigation, Ordinance 83-4 was amended during August 1999 to remove any power of the Town to directly enforce private deed restrictions. The ordinance now states: "Interpretative Guidelines. Because the comprehensive zoning regulations imposed by law were founded on the recorded covenants and restrictions applicable to the Palm Valley Estates subdivisions prior to its incorporation as a municipality, the recorded covenants and restrictions imposed on the realty shall serve as guidelines in the application and interpretation so as to preserve the original character of the community, provided, however, that the fair and reasonable interpretation of the text of the comprehensive zoning ordinance shall always control the application and enforcement of the provisions contained in Ordinance 83-4, as amended" [Dkt. No. 43, Exhibit P, Sect. 2].

2

After Plaintiffs exhausted Town administrative avenues, they filed suit in this Court alleging that Ordinance 83-4's setback provision constitutes a taking in violation of Article 1, § 17 of the Texas Constitution and the Fifth Amendment of the United States Constitution – as applied to the states through the Fourteenth Amendment. In addition, Plaintiffs allege that the ordinance violates the Fourteenth Amendment Due Process Clause. For all claims, Plaintiffs claim that the setback provision is unconstitutional as applied to them individually, and on its face, and asks the Court to declare the provision unconstitutional under either the federal Declaratory Judgment Act, 28 U.S.C. § 2201 (1994), or the Texas Uniform Declaratory Judgment Act, Tex. Civ. Prac. & Rem. Code Ann. § 37.003 (West 1997).

The Parties have filed cross motions for summary judgment. The Plaintiffs allege that the summary judgment evidence shows that Ordinance 83-4's setback provision commits an unconstitutional taking because it does not serve a public purpose and is arbitrary and capricious. Defendant counters that the ordinance serves a legitimate public purpose, that the Plaintiffs' claims are not ripe, and that the Plaintiffs have no claim because the ordinance was in force when they acquired their lot.

II.    SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure allows summary judgment only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Singh v. Shoney's, Inc., 64 F.3d 217, 218 (5th Cir. 1995). The moving party bears the burden of identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact, See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986), and the Court views the evidence in the light most favorable to the non-moving party, See Reid v. State Farm Mut. Auto Ins. Co., 784 F.2d 577, 578 (5th Cir. 1986). The Fifth Circuit has held that "[t]he standard of review is not merely whether there

3

is a sufficient factual dispute to permit the case to go forward, but whether a rational trier of fact could find for the non-moving party based upon the evidence before the Court." James v. Sadler, 909 F.2d 834, 837 (5th Cir. 1990) (citing Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)).

III.     PRELIMINARY CONSIDERATIONS: COMITY, JURISDICTION, AND RULES OF DECISION

This Court must decide the order in which to address the Plaintiffs' causes of action based on the Texas and United States Constitutions. The United Supreme Court in Siler v. Louisville & Nashville Railroad Co. stated the now well-established rule that a federal court should avoid federal constitutional issues and decide a case on state-law grounds where possible. See 213 U.S. 175, 192-93 (1909). Therefore, this Court will address the Plaintiff's Texas constitutional claims first. However, since the federal and Texas takings clauses are in most respects co-extensive, this Court will follow the recent example of the Texas Supreme Court in Mayhew v. Town of Sunnyvale, and look to the more extensive federal jurisprudence on the issue when necessary.[3] See 964 S.W.2d 922, 928-29, 932 (Tex. 1998); Lindsay v. Papgeorgiou, 751 S.W.2d 544, 550 (Tex. App. Houston [1st Dist.] 1988). Cf. Palacios Seafood, Inc. v. Piling, Inc., 888 F.2d 1509, 1513 (applying Texas law and stating that the Texas Takings Clause provides greater protection than the federal Takings Clause).

The Plaintiffs have asked the Court to decide whether Ordinance 83-4's setback provision is facially unconstitutional before it addresses whether it is unconstitutional as applied to them based on their conflict with the Town. The Court cannot conform itself to the Plaintiffs' request. A federal court may not decide a case, or declare the unconstitutionality of an ordinance, on broader grounds than necessary. See Burton v.

---

[3]As in Mayhew, the litigants have relied on federal case law in arguing their summary judgment motions to the Court.

United States, 196 U.S. 283, 295 (1905); Hoffert v. General Motors Corp., 656 F.2d 161, 165 (5th Cir. 1981).   Since a statute cannot be facially unconstitutional unless it is also unconstitutional as applied to all individuals, including the Plaintiffs, the Court must address the "as applied" claim first.   See City of Chicago v. Morales, 119 S.Ct. 1849, 1869 (1999).

The Court may sua sponte address whether it should use Pullman abstention to avoid deciding this case. See Bellotti v. Baird, 428 U.S. 132, 142 (1976).  Pullman abstention is appropriate when difficult and unsettled issues of state law must be resolved to dispose of a case, and when interpretation of state law may render unnecessary a decision based on the federal Constitution.  See Railroad Comm'n of Texas v. Pullman Co., 312 U.S. 496, 500 (1941).  Pullman abstention, however, is not "required for interpretation of parallel state constitutional provisions," such as the takings provisions of the Texas and United States Constitutions. See Hawaii Housing Authority v. Midkiff, 467 U.S. 229, 237 n.4 (1984) (citing Examining Bd v. Flores de Otero, 426 U.S. 572, 598 (1976)).   In addition, "[a]bstention from the exercise of federal jurisdiction is the exception, not the rule." Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 813 (1976). Therefore, the Court rules it would not be appropriate for it to abstain from deciding this case.

Whether an ordinance serves a private or public purpose is a question of law to be answered by the Court. See Anderson v. Teco Pipeline Co., 985 S.W.2d 559, 565 (Tex. App. San Antonio 1998).  However, the Court does not have free rein in reaching a decision on the purpose of an ordinance.  The Court must give great deference to the purposes stated by the legislature. See Texas Fruit Palace, Inc. v. City of Palestine, 842 S.W.2d 319, 322 (Tex. App. Tyler 1992).  In addition, ordinances enacted by a municipality bear a presumption of constitutionality.  See City of Pharr v. Pena, 853 S.W.2d 56, 60 (Tex. App. Corpus Christi 1993).   If reasonable minds can disagree on whether an ordinance has a substantial

relationship to a public purpose, a court must uphold the ordinance as an admissible use of the state's police powers.  Bell v. Waco, 835 S.W.2d 211, 214 (Tex. App. Waco 1992).

IV.    THE PLAINTIFFS' CLAIMS ARE RIPE

The Defendant claims that its summary judgment motion should be granted because the Plaintiffs' claims are not ripe.  It asserts that the Plaintiffs have not exhausted the available state and local avenues for gaining compensation because a Town administrative body, the Board of Adjustments, is currently reconsidering its decision denying Plaintiffs' variance appeal; the Town is considering amending Ordinance 83-4; and the Plaintiffs should have appealed the decision of the Board of Adjustments in state court as authorized by the Texas Local Government Code. Tex. Local Gov't Code Ann. § 211.011 (West 1988).  The Defendant's argument fails because the Plaintiffs allege that their property was taken for a private purpose, and, in that case, they are not required to exhaust their state administrative remedies.  To decide whether the Plaintiffs' claims are ripe, it is enough that they assert in their complaint that the taking is private.  They do not need to prove that their allegations are correct.  The merits of Plaintiffs' argument that Ordinance 83-4's setback provision commits a taking for a private purpose are discussed infra in Section VI of this order.

The Texas Supreme Court recently held that it would "look to the experience of federal courts in determining the ripeness of constitutional challenges to land-use regulations."  Mayhew, 964 S.W.2d at 928-29.  The court relied on federal law because only one Texas court had considered the issue, and because of the "extensive jurisprudential experience" of the federal courts on the issue.  Id. at 929 (citing Texas Ass'n of Business v. Texas Air Control Bd., 852 S.W.2d 440, 444-45 (Tex. 1993)).  The Fifth Circuit has held that when a Plaintiff brings a claim alleging that her property was taken for a private use, she does not need to exhaust the available state remedies before suing in federal court.  See Samaad v. City of Dallas, 940 F.2d 925, 936-37 (5th Cir. 1991).  This holding makes sense

CWPDF - www.fastio.com

because the Texas and United States Constitutions state that private property cannot be taken for public use without compensation. U.S. Const. amend. V; Tex. Const. art. I, § 17. If adequate local or state avenues for compensation are available, the taking is not unconstitutional. See Williamson County Reg'l Planning Comm'n v. Hamilton Bank of Johnson City, 473 U.S. 172, 194 (1985); Barshop v. Medina County Underground Water Conservation Dist., 925 S.W.2d 618, 631 (Tex. 1996). In contrast, a taking is unconstitutional if made for private use regardless whether compensation is provided or not, and, therefore, it would serve no purpose to require a litigant to exhaust avenues of compensation. See Samaad, 940 F.2d at 936-37; Maher v. Lasater, 354 S.W.2d 923, 924 (Tex. 1962); Anderson, 985 S.W.2d at 564.

## V.    THE TAKINGS CLAUSE OF THE TEXAS CONSTITUTION AND THE STATE'S POLICE POWERS

The Texas Constitution prohibits takings for private purposes and allows compensated takings for public purposes. Article I, § 17 of the Texas Constitution provides, in pertinent part: "No person's property shall be taken, damaged or destroyed or applied to public use without adequate compensation being made . . . ." Tex. Const. art. I, § 17. Texas courts have repeatedly held that the inverse implication of Article I, § 17 is that a taking for private purposes is illegitimate and unconstitutional. See e.g. Maher, 354 S.W.2d at 924; Anderson, 985 S.W.2d at 564; Saunders v. Titus County Fresh Water Supply Dist. No. 1, 847 S.W.2d 424, 428-29 (Tex. App. Texarkana 1993); Tenngasco Gas Gathering Co. v. Fischer, 653 S.W.2d 469, 474 (Civ. App. Corpus Christi 1983); Atwood v. Willacy County Navigation District, 271 S.W.2d 137, 140 (Tex. App. San Antonio 1954).

The line that separates a permissible public purpose from an impermissible private purpose is less clear, and relies in large part on common sense and on an analysis of the facts of each case. See Coastal Gas Producing Co. v. Pate, 309 S.W.2d 828, 833 (Tex. 1958). The

7

definition of "public purpose" most frequently quoted by Texas courts would lead one to believe that the concept is very restrictive. The definition states, "Property is taken for public use as intended by the Constitution only when there results to the public some definite right or use in the business or undertaking to which the property is devoted." <u>Borden v. Trespalacios Rice & Irrigation Co.</u>, 86 S.W. 11, 15 (Tex.1905). <u>See e.g.</u> <u>Davis v. City of Lubbock</u>, 326 S.W.2d 699, 706 (Tex.1959); <u>Coastal States Gas Producing Co.</u>, 309 S.W.2d at 833; <u>Housing Authority of City of Dallas v. Higginbotham</u>, 143 S.W.2d 79, 85 (Tex. 1940); <u>Bay Ridge Utility Dist. v. 4M Laundry</u>, 717 S.W.2d 92, 100 (Tex. App Houston [1st Dist.] 1986); <u>Loesch v. Oasis Pipe Line Co.</u>, 665 S.W.2d 595, 597 (Tex. App. Austin 1984).

"Public use" has been defined broadly by most Texas courts. <u>See</u> <u>Davis</u>, 326 S.W.2d at 706. For example, property is not acquired for private use simply because few members of the public actually use it, as long as it is open to all. <u>Higginbotham</u>, 143 S.W.2d at 84. Also, the redistribution of private property to third parties has been defined as "public" in limited circumstances when slums created urban blight. <u>See</u> <u>Davis</u>, 326 S.W.2d at 702-05. However, regardless whether "public use" is defined narrowly or expansively, it is clear that a zoning ordinance cannot constitutionally take private property rights for the sole the benefit of a private corporation or a limited number of individuals who pay for a service; there must be some overriding public interest which is directly furthered. <u>See e.g.</u> <u>Coastal States Gas Producing Co.</u>, 309 S.W.2d at 178-79.

Takings law intersects with the extensive jurisprudence on the exercise of state police powers because both require an ordinance or act to have a public purpose.   <u>See</u> <u>City of Austin v. Teague</u>, 570 S.W.2d 389, 391 (Tex. 1978) (stating that the two bodies of law often intersect). Zoning ordinances are unconstitutional if they infringe upon individual liberties and fall outside the scope of the state's police powers. <u>See</u> <u>Texas Bollweevil Eradication Foundation, Inc. v. Lewellen</u>, 952 S.W.2d 454, 461 (Tex. 1997). The state's police power encompasses only those zoning ordinances which are "substantially related to the health,

8

safety or general welfare of the people" and are not arbitrary or unnecessary. <u>City of College
Station v. Turtle Rock Corp.</u>, 680 S.W.2d 802, 804-05 (Tex. 1984). If a zoning ordinance
is clearly not supported by the police power, it will most probably constitute a taking in
violation of Article I, § 17 of the Texas Constitution. However, the two doctrines by no
means complement each other neatly when applied to close calls. The Texas Supreme Court
has rejected the notion that all exercises of the police power are exceptions to the takings
clause and vice versa. <u>See</u> <u>Teague</u>, 570 S.W.2d at 391.

Texas law on whether a municipality can use its police powers to zone for aesthetic
purposes is not clear. The Texas Supreme Court in <u>Lombardo v. City of Dallas</u> stated in
dicta that "[r]egulations interfering with private property rights are invalid if founded upon
purely aesthetic consideration." 73 S.W.2d 475, 479 (Tex. 1934). In addition, a setback
provision of twenty-five feet was held invalid in <u>City of Amarillo v. Meade</u> because it had
no substantial relationship to a legitimate public purpose. <u>See</u> 286 S.W.2d 276, 278 (Tex.
App. 1956). Presumably one of the purposes of the setback provision was aesthetics,
although the court made no explicit statement why it believed that it fell outside the scope
of the state's police powers. More recently, an appellate court held that zoning for aesthetic
purposes is permissible in certain circumstances. <u>See</u> <u>Pena</u>, 853 S.W.2d at 61. In <u>Pena</u>, the
court held that it was legitimate to refuse to rezone property to prevent the Plaintiff from
creating an eyesore by setting up a junkyard along a highway. <u>Id.</u> Therefore, a municipality
can zone or to refuse to zone for aesthetic purposes when it will seriously affect the
community.

A municipality may enact zoning ordinances to preserve community property values
in combination with other public concerns. It is not clear from Texas case law whether
protecting property values, when viewed alone, is sufficient, because all the cases identified
by this Court discuss the preservation of property values along with additional public
interests. For example, in <u>MJR's Fare of Dallas, Inc. v. City of Dallas</u>, the court upheld an

ordinance that regulated the location of sexually oriented businesses within the community to "protect the public safety through decreased crime rates and to promote the general welfare through the protection of property values and elimination of urban blight." 792 S.W.2d 569, 573 (Tex. App. Dallas 1990).  See also City of Brookside Village v. Comeau, 633 S.W.2d 790, 793-94 (Tex. 1982) (holding ordinance regulating mobile home parks to be legitimate use of police powers because of an inferior sewage system, fire risk, congestion, other special health problems, and the effect on surrounding property values); Connor v. City of University Park, 142 S.W.2d 706, 712 (Tex. App. Dallas 1940) (upholding ordinance limiting businesses in a residential district based on purposes of conservation of property values, lessening of congestion in the streets, preventing overcrowding of population, among others).

## VI.    THE SETBACK PROVISION DOES NOT SERVE A PUBLIC PURPOSE

The purposes for Ordinance 83-4's setback provision articulated in the record are to: (1) preserve the view of the golf course for Plaintiffs' neighbors and members of the Harlingen Country Club, and preserve the aesthetic appearance of the Town;

(2)  promote the general welfare "based on the character of the district . . . and with a view of conserving the value of buildings and encouraging the most appropriate use of land";[4] and,

(3) allow members of the Harlingen Country Club to retrieve their errant golf balls from Plaintiffs' property.

After careful consideration of the record, the Court cannot identify any additional purposes served by the setback provision.  The first and second goals articulated by the parties are directly based on the statement of purposes contained in Ordinance 83-4,  and, therefore, are entitled to great weight.  However, the ordinance's statement of purposes is not outcome

---

[4] Dkt. No. 13, Exhibit A-1, Art I.

10

determinative if "the purpose is clearly private in nature."[5]  Texas Fruit Palace, Inc., 842
S.W.2d at 322.  In fact, each of the identified purposes benefits only private parties, is not
a legitimate public purpose or is so attenuated as to not merit serious consideration.  As a
Texas court has commented it is "difficult to conceive of a situation where the mere size of
a yard, considered by itself, has any substantial relationship to the health safety, morals or
general welfare of the community."  Meade, 286 S.W.2d at 278.

Both the Plaintiffs and the Defendant agree that one of the purposes of the setback
provision is to preserve a view of the golf course and the aesthetic appearance of the Town.
This purpose is included in Ordinance 83-4's statement of purposes, which states that the
ordinance was enacted based on "the character of the district" and to promote the "general
welfare" [Dkt. No. 13, Exhibit A-1, Art. 1].  Two sets of individuals benefit from this aspect
of the setback provision: individuals who play golf and the Plaintiffs' neighbors.

The summary judgment evidence shows that individuals who play on the golf course
must pay to become members of the Harlingen Country Club, be invited as a guest of a
member of the club, or attend a private function held there.  The view from the golf course
out onto Plaintiffs' yard benefits a limited number of individuals who pay money, in part, so
they can partake of it.  While it is not necessary for a zoning ordinance to benefit many
individuals, the benefit must potentially be accessible to all for the ordinance to serve a
public purpose. See e.g. Higginbotham, 143 S.W.2d at 84; Dyer, 680 S.W.2d at 884-85;

_____

[5] The Court must use give deference to the statement of purposes because state rules of statutory construction
control when a federal court examines the constitutionality of a state law.  Causeway Medical Suite v. Ieyoub, 109 F.3d
1096, 1107 (5th Cir. 1997). The statement of purposes of Ordinance 83-4 is quoted verbatim, in most part, from the state
statute that empowers local governmental bodies to enact zoning ordinances.  Tex. Local Gov't Code Ann. § 211.004
(West 1988).  Ordinance 83-4 states: "The zoning regulations and districts as herein established have been made in
accordance with a comprehensive plan for the purpose of promoting health, safety, peace, morals and the general
welfare of the Town of Palm Valley.  They have been designed to lessen congestion in the streets; to secure safety from
fire, panic and other dangers; to provide adequate light and air; to prevent the overcrowding of land; to avoid undue
concentration of population; to facilitate adequate provisions for transportation, water, sewerage, parks and other public
requirements.  They have been made with reasonable consideration, among other things, for the character of the district,
and its peculiar suitability for the particular uses; and with a view of conserving the value of buildings and encouraging
the most appropriate use of land throughout the Town of Palm Valley" [Dkt. No. 13, Exhibit A-1, Art I].

11

Tenngasco, 680 S.W.2d at 475.  In Dyer, the court held that condemning a right of way for an electric power line for the benefit of a single person was an act of public character.  See Dyer, 680 S.W.2d at 885.  In other words, since any person whose property had no access to an electric line could benefit, all benefitted from the possible access.  Here, no such public character is present, in that the individuals who benefit from the setback provision are a limited number of paying customers and guests.  No one else can become similarly situated and thereby benefit from the provision.  The purpose of benefitting members of the Harlingen Country Club or users of the golf course therefore violates the Texas Constitution's prohibition on takings for a private purpose.  See Maher, 354 S.W.2d at 924.

The other set of individuals who benefit from the setback provision are Plaintiffs' immediate neighbors.  They benefit because they have a more extensive panoramic view of the golf course than if Plaintiffs were allowed to build a fence in their back yard.  The neighbors' interest in the setback provision is therefore of an aesthetic nature.  The most recent Texas Supreme Court case on aesthetic zoning states in dicta that zoning for purely aesthetic considerations is not permissible.  See Lombardo, 73 S.W.2d at 478.

While at least one Texas court has upheld a refusal to rezone based on aesthetical grounds, the case before this Court is clearly distinguishable.  See Pena, 853 S.W.2d at 61. In Pena, the court held that a junkyard would create a serious eyesore; in contrast, in this case the Plaintiffs simply would like to a build a fence along the property line in their back yard. Id.  The effect of the fence would only be felt by the Plaintiffs' neighbors -- instead of the whole community in the case of a junkyard built along a highway -- and the Defendant has made no allegation that the fence would create an eyesore.    While some ordinance provisions may be legitimately based on aesthetical considerations, Ordinance 83-4's setback provision does not fall within that group.

The neighbors affected by the setback provision are distinguishable from the public at large because they and they alone have access to the panoramic view of the golf course.

12

They are private parties because, like the individuals who use the golf course, their view is not potentially accessible to all. See discussion and cases cited supra. The purpose of preserving the Plaintiffs' neighbors' view of the golf course is a private purpose that violates the Texas Constitution.

In essence, the setback provision transfers part of the Plaintiffs' bundle of property rights to their neighbors. In certain circumstances, not present in this case, it is acceptable for a government body to transfer private property rights to one or more private third parties. However, the Texas cases on the subject concern circumstances in which the transfer of rights will so seriously affect the community that the private transfer becomes public in nature. For example, in Davis v. City of Lubbock, the Texas Supreme Court held that the condemnation and transfer of private land in a blighted part of Lubbock served a public purpose because "such areas contribute substantially and increasingly to the spread of crime, disease and juvenile delinquency . . . [and] such areas necessitate excessive and disproportionate expenditures for the preservation of the public health and safety and for adequate police and fire protection." Davis, 326 S.W.2d at 703-04. The purpose of preserving a view of a golf course does not reach the same level as such an important concern.

The second purpose presented for Ordinance 83-4's setback provision is that it promotes the Town's general welfare by preserving property values. Defendant has presented a parade of horribles to the Court, whereby invalidating the setback provision of the ordinance will lead to a serious economic decline in the community. The Defendant argues, through its expert, that the properties bordering on the golf course have a higher value than property elsewhere in the Town because of their view over the golf course. The Defendant's expert states:

> Once the unobstructed views of the golf course begin to disappear, there will
> no longer be any compelling reason to pay significantly more for golf course

13

CHAPDF - www.fastio.com

properties, and the value of these properties along with the amount of taxes
that could be collected from their owners will begin to decline. In order to
maintain service levels, the city would then be forced to raise tax rates, thus
shifting the loss to all the other property owners in the town. With increased
tax rates, properties in the area become less attractive to potential investors
when compared to properties in similar competing areas with lower tax rates.
. . . Even renters would be affected because landlords would undoubtedly raise
rents to pass on the increased tax expense to their tenants as soon as lease
terms allow [Dkt. No. 13, Exhibit J, p. 4-5].

This chain of cause and effect is based on pure conjecture. Even if properties bordering the
golf course do have a higher value because of their view and the aforementioned trickle
down effect were to occur, the fact remains that the setback provision directly benefits only
a limited number of private parties. Any number of actions taken by or attributes of a private
party can affect property values, yet it would not be legitimate for the local government to
regulate all of them under the guise of public interest. While the Town may enact
ordinances, at least in part, to preserve property values, in this case, that purpose is too
attenuated to warrant serious consideration. See e.g. Comeau, 633 S.W.2d at 793-94; MJR's
Fare of Dallas, Inc., 792 S.W.2d at 573; Connor, 142 S.W.2d at 712.

The Defendant also argues that invalidating Ordinance 83-4's setback provision will
negatively affect the Harlingen Country Club and its golf course, and that the entire town has
an interest in the economic well-being of the country club, and, therefore, maintaining the
setback provision is in the public interest. The Defendant states through its expert: "[J]ust
as excellent schools need not be owned by a city to draw residents, neither does the town of
Palm Valley need to own the golf course to recognize that what is good for the golf course
will generally be good for the town as a whole" [Dkt. No. 13, Exhibit J, p. 5]. The country
club's well-being very well may affect the prosperity of the Town, but nevertheless it is a

14

private organization that may only be used by paying individuals and their guests. A zoning ordinance may not have the explicit and sole purpose of benefitting a private organization, without a concomitant public benefit. See e.g. Davis, 326 S.W.2d at 706-07. Therefore, in conclusion, the purpose of conserving property values is not legitimate, as applied to the setback provision of Ordinance 83-4, and cannot support the provision's constitutionality.

The Plaintiffs argue that one of the purposes of Ordinance 83-4's setback provision is to allow golfers to retrieve their stray balls from the Plaintiffs' back yard. The Plaintiffs have not provided the Court with sufficient evidence to decide whether the setback provision is enforced for that purpose.[6] The only summary judgment evidence that discusses the right of golfers to retrieve balls is the Plaintiffs' deposition of the Town's mayor [Dkt. No. 13, Exhibit N, pp. 51-52, 64-66]. The mayor states that golfers have the right to retrieve balls from the setback area, but it is not clear whether that right is based on the manner in which Ordinance 83-4 is enforced, an informal agreement among the private property owners, or restrictive covenants on properties bordering the golf course. While there is insufficient information in the record, the Court may still reach a final decision on the Plaintiffs' and Defendant's summary judgment motions. The Court cannot conceive of a legitimate argument that a right given to members of a private country club to trespass on Plaintiffs' land to retrieve golf balls could serve a public purpose.

In conclusion, the purposes for the setback provision of Ordinance 83-4 presented to the Court by the Defendant and the Plaintiffs do not serve a public purpose. The provision solely serves the interests of private parties. The Court declares the setback provision of Ordinance 83-4 unconstitutional as applied to the Plaintiffs because it is a taking in violation

---

[6]The Defendant argues that the Court should not consider the mayor's testimony because his opinion, as an individual legislator, has no bearing on the whether the provision is constitutional. There is no need for the Court to consider this argument to reach a decision.

of Article I, §17 of the Texas Constitution. This declaration is made under the Texas Declaratory Judgment Act. Tex. Civ. Prac. & Rem. Code Ann. § 37.004 (West 1988).

For the foregoing reasons, the Plaintiffs' Motion for Summary Judgment [Dkt. No. 7] is **GRANTED** and the Defendant's Cross Motion for Summary Judgment [Dkt. No. 26] is **DENIED**.

DONE at Brownsville, Texas, this _____ day of November 1999.

Hilda G. Tagle
United States District Judge

16